**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

FILED

01 AUG 30 AM 11: 31

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **VALLIE THOMAS, III,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **CASE NO. CV-99-B-2821-S** |
| **THE GOODYEAR TIRE & RUBBER** | ) |
| **COMPANY,** | ) **ENTERED** |
| | ) |
| **Defendant.** | ) **AUG 3 0 2001** |

## MEMORANDUM OPINION

Currently before the court is Defendant The Goodyear Tire & Rubber Company's Motion for Summary Judgment. Plaintiff Vallie Thomas, III ("plaintiff" or "Thomas") asserts claims of race discrimination against The Goodyear Tire & Rubber Company ("defendant" or "Goodyear") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.[1] Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the defendant's motion for summary judgment is due to be granted.

## I. FACTUAL SUMMARY

Goodyear operates retail stores where it sells its products and offers automotive repair and maintenance services. (DXI at ¶ 2.)[2] Plaintiff, an African-American, worked as a Service

---

[1] Plaintiff originally filed his Complaint on October 20, 1999. However, following a conference with the parties on February 18, 2000, the court ordered plaintiff to file an amended complaint setting forth his claims with specificity. In response to that order, plaintiff filed an Amended Complaint on February 25, 2000.

[2] Defendant's Evidentiary Submission in Support of Its Motion for Summary Judgment will be cited as "DXI" followed by the corresponding tab letter.

45

Technician at Goodyear Retail Store 2221 in Birmingham, Alabama from approximately 1992 until July 1999, when he took a leave of absence due to medical problems. (DXI A at 80, 85-86, 162-63.) As a Service Technician, he was responsible for performing mechanical repairs on automobiles. (DXI D at ¶ 5.) There is no evidence that Service Technicians sell or promote either services or products, or that they manage or supervise other employees.

In addition to Service Technicians, the staff of a Goodyear retail store generally includes a General Manager, Service Manager, Customer Service Advisor (sometimes also called Tire Salesperson or Customer Service Representative), and one or more general mechanics. (DXI D at ¶ 4.)

Plaintiff contends that defendant unlawfully discriminated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 by (1) not selecting him for the position of Customer Service Representative, but rather awarding the position to W.R. "Chip" Pool ("Pool") in July 1998; (2) not selecting him for the Service Manager position awarded to Pool in June 1999; (3) not selecting him for the Customer Service Representative position vacated by Pool in June 1999; (4) paying him less than Glassell Anderson; and (5) failing to follow its own practice of assigning the first service job of the day to the Service Technician who arrived at work the earliest to plaintiff's detriment. (Am. Compl.)[3]

---

[3] In Plaintiff's Response Brief To Defendant's Motion For Summary Judgment And Memorandum In Support Thereof ("Pl.'s Response Brief"), plaintiff, for the first time, alleges additional acts of discriminatory treatment, namely, the denial of sick pay benefits, and the denial of days off work. Because these claims were not pled in either the Complaint or Amended Complaint and are absent from the EEOC charge, they are not properly before the court and can afford no basis for relief. *See Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987).

A.    **Customer Service Advisor Position Filled in July 1998**

Goodyear Customer Service Advisors' two primary functions are selling products and "writing" service. (DXI E at ¶ 5.)  Unlike a Service Technician, who performs repairs, a Customer Service Advisor deals directly with Goodyear's customers, advising them of and promoting the products and services Goodyear provides.  (DXI A at 31-33; DXI C at 30-39.) When filling Customer Service Advisor positions, Goodyear prefers individuals with strong sales ability, enthusiasm, and good people skills.  (DXI B at 38.)  Prior management experience is also desired in candidates, because it indicates the candidate's future growth potential as an employee. (*Id.* at 39.)

In 1998, a Customer Service Advisor position at Store 2221 opened, and Goodyear advertised the opening in the local newspaper.  (DXI D at ¶ 10.)  When Pool responded to the advertisement, (DXI C at 37),  District Manager Doug Archer ("Archer") interviewed Pool, and Store Manager Polly Tanner ("Tanner")  hired Pool in July 1998.  (DX$_1$ D at ¶ 11.)  Pool's starting hourly rate of pay was $9.76.  (DXI B at 48; DXI D at ¶ 11.)  At that time, plaintiff's hourly rate of pay as a Service Technician exceeded $13.00.  (DXI B at 48; DXI D at ¶ 17, and Ex. A attached thereto).[4]

Archer claims that he understood that plaintiff was not interested in the Customer Service Advisor position because of a discussion he had with plaintiff in June 1998.  (DXI B at 47-48.)

---

[4] Plaintiff refers to the Customer Service Advisor position as a promotion from the Service Technician position.  (Am. Compl. ¶ 14.)  However, because the position would have paid a lower hourly rate than plaintiff's current position and involved no supervisory duties, it appears that plaintiff cannot establish any economic loss based on his failure to receive the position.  For purposes of this Memorandum Opinion and without deciding the issue,  the court will refer to this position as a "promotion."

Plaintiff stated that Archer told him the job was available, but probably would not pay as much as his current job and would be a part-time position. (PXI A at 122-123.)[5] According to Archer, plaintiff said that he "might be interested" in the job, but when told the hourly pay would be less than he was already making, said: "Oh, I can't take a pay cut." (DXI B at 47.) Archer does not recall stating that the job would be part-time. (DXI B at 47.) Archer claims that he concluded plaintiff was not interested in the position when plaintiff told Archer that he could not take a pay cut. (DXI D at ¶ 10.) Had plaintiff been awarded this position, his hourly rate would have been significantly reduced because the wage range for the position was $7.99 - $11.98 an hour, which was below plaintiff's hourly rate of pay as a Service Technician. (DXI D at ¶ 11.)[6]

Pool had experience in sales, service and management, including employment as a salesman or service manager for Montclair Auto Service from 1991-1993, for Carl's Car Clinic from 1994-96, and for Pool's Automotive from 1996-1998. (DXI D at ¶ 12, and Ex. D attached thereto.) While working at Carl's Car Clinic, Pool "wrote the service; took care of the customers; handled the service, any kind of problem with the service; directly assigned all service work [and] was in charge of quality control." (DXI C at 32.) While working at Pool's Automotive, his family business, Pool handled the front sales for the business. (DXI C at 35.) Pool was familiar with selling both automotive services and with selling Goodyear products because Pool's Automotive sold Goodyear tires. (DXI C at 17.) He had also worked as a car salesperson for Century Chevrolet from 1992-1994, and was a GM-trained technician. (DXI C

---

[5] Plaintiff's Evidentiary Submission in Support of Response to Defendant's Motion for Summary Judgment will be cited as "PXI" followed by the corresponding tab letter.

[6] The starting rate for this position is generally well below the top of this range. (DXI D at ¶ 11.)

4

at 15-36; DXI D at ¶ 12, and Ex. D attached thereto.)  Although plaintiff has significant

experience as a mechanic, he has presented no evidence of having sales or management

experience in the automobile parts or service.  (DXI A at 7-29; DXI D at ¶ 12, and Ex. J attached

thereto.)[7]  At the time of his deposition, plaintiff did not know Pool's qualifications for this

position.  (DXI A at 168-69.)

**B.      Plaintiff's Shoulder Injury and Subsequent Work History**

On March 23, 1999, plaintiff injured his back at work.  (PXI A at 81.)  He took medical

leave from approximately April 1, 1999, until June 21, 1999, (DXI A at 159,167), when he

returned to work with an 85-pound lifting restriction, (PXI E).  Upon his return, plaintiff

immediately took a one week vacation.  (DXI A at 170.)  After returning from vacation, on June

28, 1999, he worked until July 8, 1999, before again taking a medical leave of absence.  (DXI A

at 170; DXI D, Ex. A attached thereto.)  Since then, plaintiff has not worked for Goodyear or

anyone else.  (DXI A at 160.)  Plaintiff testified that as of October 1999, he did not know if he

could perform any jobs at Goodyear.  (DXI A at 71.)[8]  He also testified that he did not know if he

could perform any job at Goodyear as of his last day of actual work on July 8, 1999.  (DXI A at

---

[7] Plaintiff has served as a pastor since 1994.  (PXI D at ¶ 5.)  Plaintiff suggests that serving
in this position gave him supervisory experience.  (Pl.'s Response Brief at 3.)  However, because
the record is totally devoid of any suggestion that defendant had knowledge of plaintiff's serving
in this position, it is not probative of any issue.

[8] Plaintiff initially testified in his deposition that he could not perform any jobs at Goodyear.
(DXI A at 71.)  He later submitted a deposition Errata sheet changing his testimony to state that he
"did not know" if he could perform any jobs.  Although referenced in Defendant The Goodyear Tire
& Rubber Company's Memorandum in Support of Its Motion for Summary Judgment ("Def.'s
Brief"), the Errata sheet is not in evidence before the court.  For purposes of summary judgment the
result is the same, because plaintiff has the burden of establishing his qualifications for the job.

85-86, 162-163.)[9]  The Service Manager must be able to and commonly does lift objects weighing up to 100 pounds.  (DXI D at ¶ 23, and Ex. H attached thereto; DXI G at ¶ 3.)  The Customer Service Advisor must be able to unload and stack tires, batteries, and other heavy objects.  (DXI D at ¶ 23; DXI C at 38-39, 55-56.)

**C.    Service Manager Position Filled in June 1, 1999**

In the spring of 1999, Tanner took disability leave and ultimately retired from her position as Store Manager.  (DXI C at 40.)  During Tanner's leave, Service Manager John King ("King") and Pool managed the store.  (DXI C at 49-50, 57.)  During this period, Pool worked six days each week with few breaks and performed not only his job duties, but also many of the Service Manager's duties, while King served as acting Store Manager.  (DXI C at 49-51.)  In May 1999, Tanner retired and King, who had been the Service Manager for more than twenty years, became the Store Manager.  (DXI G at ¶ 2.)  On June 1, 1999, King and Archer promoted Pool into the open Service Manager position.  (DXI D at ¶¶ 25-26; DXI G at ¶¶ 8-9.)  Plaintiff was on medical leave when this job was awarded to Pool.  (DXI D at ¶ 26; DXI G at ¶¶ 9-10.)

**D.    Customer Service Advisor Position Filled in June 1999**

On June 1, 1999, while plaintiff was on medical leave, (DXI A at 84-85), King hired David Farlow ("Farlow") to fill the Customer Service Advisor position vacated by Pool, at an hourly rate of $10.65.  (DXI D at ¶¶ 24-26; DXI G at ¶¶ 8-10.)  Farlow had many years of customer service and inventory control experience, as well as managerial experience.  (DXI D at

---

[9]  According to Defendant's Brief, plaintiff made a similar change to this response on his Errata sheet.

¶ 24, and Ex. I attached thereto.)[10]  He also had years of general sales experience.  (*Id.*)  In particular, Farlow was the Alabama sales representative of body shop equipment for Mitchell Automotive Equipment from 1986 to 1988.  (*Id.*)  He served as Assistant Manager and Manager at Windham Tire and Wheel Service from 1988 to 1994, having responsibility for sales, customer service, inventory and orders.  (*Id.*)  From 1994 to 1996, Farlow served as a National Service Representative for Thicket Publishing, Inc., where he was responsible for phone sales, orders, and collections. (*Id.*)  Moreover, from 1996 to 1997, he was the Assistant Manager in charge of sales, customer service, inventory and orders, and management of employees for Parkway Tire and Automotive.  (*Id.*)  Later, Farlow worked for Register Tape International as an Advertising Sales Representative responsible for sales, customer service, and advertisement design.  (*Id.*)  At the time of his deposition, plaintiff did not know Farlow's qualifications for this position.  (DXI D at 168-69.)

**E.     Hourly Rate of Service Technicians**

During plaintiff's employment various Service Technicians worked briefly at Store 2221, but the only two who remained throughout his tenure were Glassell Anderson ("Anderson") and Charlie Aycock ("Aycock").  (PXI A at 104; DXI D at ¶ 5.)  Both are white, (PXI A at 104), and both had more credited service time with Goodyear than plaintiff.  (DXI D at ¶ 5.)

Prior to 1994, plaintiff was the Service Technician who received the highest hourly wage

---

[10] Plaintiff contends that Farlow's resume, Exhibit I attached to DXI D, is inadmissible hearsay, and thus, not properly before the court. (Pl.'s Response Brief at 14.)  The court, however, is of the opinion that Farlow's resume is not hearsay, because it is not introduced to prove the truth of the matter asserted therein, but rather to show what information defendant relied on in making its decision to hire Farlow.

at Store 2221.[11]  (PXI A at 137; DXI F at ¶ 4.)  From July 3, 1997, until the end of his active

employment on July 8, 1999, plaintiff's hourly rate increased from $12.71 to $13.48 an hour.

(DXI D at ¶ 7, and Ex. A attached thereto.)  During the corresponding period Aycock, a white

Service Technician, received no raises and earned $13.05 an hour.  (DXI D at ¶ 7, and Ex. B

attached thereto.)  Anderson's pay increased from $13.60 to $14.42 during this period.  (DXI D

at ¶ 7, and Ex. C attached thereto.)

Archer made the final decision as to pay increases given to Service Technicians at Store

2221, based on recommendations of the Store Managers.  (DXII A at ¶ 3.)[12]  Although plaintiff

and Anderson, who is white, both received raises in 1997 and 1998, Anderson's raises were

slightly higher because Store Managers Troy Tew ("Tew") and Tanner concluded that

Anderson's overall performance justified larger pay increases than were given to plaintiff.  (DXI

E at ¶ 4; DXI F at ¶ 4.)  They maintained that Anderson's work was better than plaintiff's,

because Anderson had fewer "comebacks," that is, customers returning to the store who

complained of the same problem that the Service Technician was charged with fixing on the first

visit.  (DXII A at ¶ 3; DXII B at ¶ 3.)  As a result, Tew stated that he had more confidence in

Anderson's mechanical work.  (DXII B at ¶ 3.)

Defendant also considered Anderson to be a better team player, because he was more

---

[11] In 1995, Goodyear changed to a flat rate wage system whereby Service Technicians are paid an hourly rate, but their "labor hours" worked are based on a "book estimate" of the time to complete a particular job, rather than the actual hours worked.  (DXI A at 106-08; DXI D at ¶ 6.) The time estimate is contained in a rate book established based on industry standards.  (DXI A at 107-108, 110-11.)  All full time Service Technicians are guaranteed a minimum of thirty hours of pay at their regular hourly rate if they work a full week.  (DXI D at ¶ 6.)

[12] Defendant's Supplemental Evidentiary Submission in Support of Its Motion for Summary Judgment will be cited as "DXII" followed by the corresponding tab letter.

cooperative and more manageable than plaintiff. (DXII A at ¶3; DXII B at ¶ 3.) For example, Tew maintains that plaintiff simply refused to come to work on one occasion, even though Tew had instructed him to do so in advance. (DXI F at ¶ 3, and Ex. B attached thereto.) Plaintiff, on the other hand, claims that he had previously arranged to take that day off in order to attend an appointment. (PXII at ¶ 6.)[13] According to plaintiff, the day before his scheduled off day, King asked plaintiff to work, and plaintiff declined, stating that he had scheduled a day off. (*Id.*) Plaintiff maintains that after the conversation with King, Tew did not instruction him to work that day. (*Id.*) Although plaintiff received smaller raises than Anderson, he received larger increases than Aycock, who received no pay increases during 1997 and 1998. (DXI F at ¶ 4; DXI E at ¶ 4.) Aycock is white and had more years of credited service with Goodyear. (PXI A at 104; DXI F at ¶ 4.)

## F.     Work Assignments to Service Technicians

Goodyear generally distributes the first service job of the day to the Service Technician who arrives at work the earliest. (DXI A at 186-87; DXI D at ¶ 21.) However, it also honors customer requests for a particular Service Technician and tries to assign the most skilled Service Technician to the task. (*Id.*)

Plaintiff claims that he was unfairly denied the opportunity to work on Invoice Number 070869, on September 30, 1998. (DXI D, Ex. F.) The book value of the job corresponding to this invoice is 1.10 hours. (DXI D at ¶ 20.) That week, plaintiff worked 13.40 hours. (DXI D at ¶ 20, and Ex. G-G600730 attached thereto.) All full time Service Technicians are guaranteed a

---

[13] Plaintiff's Supplemental Evidence in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment will be cited as "PXII."

minimum of thirty hours of pay at their regular hourly rate if they work a full week, (DXI D at ¶ 6), and plaintiff was a full time Service Technician at that time who worked a full week, (DXI D, Ex. G-GY00730). Therefore, plaintiff was paid for thirty hours of work that week at his hourly rate.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III.  DISCUSSION

A.  **Disparate Treatment**[14]

In any action alleging disparate treatment by an employer, the plaintiff must prove that the employer acted with a discriminatory motive. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977).  To establish a prima facie case of discrimination, a plaintiff may employ direct evidence of discriminatory intent, statistical proof of a pattern of discrimination, or circumstantial evidence. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).  The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature.

There is no direct evidence to support plaintiff's claim of disparate treatment race discrimination.  Thus, plaintiff must rely on circumstantial evidence to support his claims. Because plaintiff is relying on circumstantial evidence to support his claims, the court is governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997) (clarifying the standard to be applied under Eleventh Circuit jurisprudence).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53.  "The facts necessarily will vary in Title VII cases, and the specification [] of the prima facie proof required from [plaintiff]

---

[14] Although plaintiff alleges racial discrimination under both Title VII and 42 U.S.C. § 1981, these claims will be addressed together because these statutes have the same proof requirements and use the same general analytical framework. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n. 13.

If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden to rebut the presumption created in such a situation is one of production rather than proof, requiring defendant to articulate a legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 257-58. In satisfying this burden:

> [t]he employer's burden of rebuttal is "exceedingly light." Since the rebuttal burden is one of production only, the employer "need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the [employee]."

*Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir. 1989) (quoting *Burdine,* 450 U.S. at 254-55) (alterations in original).

If the defendant succeeds in carrying this burden, then any "presumption of discrimination created by the *McDonnell Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity." *Combs,* 106 F.3d at 1528 (quotation omitted). The plaintiff must then prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., discrimination). *Id.* A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *See Combs*, 106 F.3d at 1529; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an

12

unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To avoid summary judgment, plaintiff must submit sufficient nonconclusory evidence that defendant's articulated legitimate reasons were pretextual. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471-72 (11th Cir. 1991); *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989). Plaintiff must put forth concrete evidence that casts sufficient doubt on defendant's proffered reasons such that a reasonable fact finder would conclude that those reasons did not actually motivate the employment decisions. *See Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2108-09 (2000); *Combs*, 106 F.3d at 1538; *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1083-84 (11th Cir. 1990).

### 1.    *1998 Customer Service Advisor Position*

Plaintiff claims he was denied a "promotion" to the open Customer Service Advisor position filled in July, 1998, by Pool. (Am. Compl. at ¶¶ 8-14.) In order to establish a prima facie case of discriminatory failure to promote, plaintiff must establish: (1) that he is a member of a protected group; (2) that he was qualified for the promotion; (3) that he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected group were promoted. *See, e.g., Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). Assuming that the position at issue would have been a promotion, defendant concedes that plaintiff has established a prima facie case, given that plaintiff is African-American, presumably met the minimum qualifications for the job, and at least verbally applied for the position which was given to a white applicant. (Def.'s Brief at 11.) Therefore, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802.

13

Goodyear has articulated legitimate nondiscriminatory reasons for its decision not to promote plaintiff: its good faith belief that plaintiff did not want the job.  Defendant contends that, based on Archer's conversation with plaintiff in June 1998, Archer understood that plaintiff would not take a pay cut and was thus not interested in the position.  (DXI B at 47-48.)  Plaintiff concedes that when asked, Archer told him the job was available, but probably would not pay as much as his current job.[15]  (PXI A at 122-123.)  According to Archer, plaintiff said that he "might be interested" in the job, but when told the hourly pay would be less than he was already making, said: "Oh, I can't take a pay cut."  (DXI B at 47.)  Plaintiff does not dispute Archer's assertion.  Archer concluded that plaintiff was not interested in the position, because he did not want to take a pay cut.  (DXI D at ¶ 10.)  The court finds that defendant's good faith belief that plaintiff was not interested in the job is a legitimate nondiscriminatory reason for its decision not to promote plaintiff.  Therefore, to preclude the entry of summary judgment for defendant, plaintiff must prove that defendant's articulated reason is a mere pretext for unlawful motives. *See Combs,* 106 F.3d at 1528.

Plaintiff, however, offers no evidence upon which a reasonable jury could conclude defendant's articulated reason for failing to promote him is pretextual.  Plaintiff merely claims that, contrary to Archer's understanding, he really did want the position.  (PXI A at 122.)  However, showing that defendant was mistaken with respect to its articulated nondiscriminatory reason for not promoting plaintiff is not sufficient to show that defendant's articulated reason is a pretext for unlawful motives. *See Elrod,* 939 F.2d at 1470("... no matter how mistaken the firm's

---

[15]Archer's statement that the position would pay less is supported by the fact that Pool, who was selected for the position, was paid at a substantially lower hourly rate than the plaintiff. (DXI B at 48; DXI D at ¶¶ 11, 17 and Ex. A attached thereto.)

managers, [Title VII and § 1981] do[es] not interfere.  Rather, our inquiry is limited to whether

the employer gave an honest explanation of its behavior.").  Because plaintiff has offered no

evidence on which a reasonable jury could find defendant's articulated reason for failing to

promote plaintiff to be pretext for illegal race discrimination, defendant is entitled to judgment as

a matter of law on this claim.  *See Elrod*, 939 F.2d at 1471-72.

       2.    *June 1999 Service Manager Advisor position*

      Plaintiff also contends that defendant's failure to promote him to the position of Service

Manager in early June, 1999, was racially discriminatory.  (Am. Compl. ¶¶ 15-19.)  In May

1999, Tanner took permanent disability leave and King became Store Manager.  (DXI C at 40.)

In early June, 1999, King promoted Pool, with Archer's approval, to the open Service Manager

position.  (DXI D at ¶ 25; DXI G at ¶ 9.)  As noted above, in order to establish a prima facie case

of discriminatory failure to promote, plaintiff must establish: (1) that he is a member of a

protected group; (2) that he was qualified for the promotion; (3) that he was rejected despite his

qualifications; and (4) other equally or less qualified employees who were not members of the

protected group were promoted.  *See, e.g., Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th

Cir. 2000).

      Plaintiff has failed to establish a prima facie case because he has not shown that he was

qualified for the Service Manager position.  First, undisputed evidence shows that this position

was filled while plaintiff was on medical leave and not released to work.  (DXI A at159, 167.)

Plaintiff had been off work for more than two months and had not been released to return to

work when Pool was promoted.  (*Id.*)  Thus, plaintiff was not qualified for the position, because

the ability to be present at work is an essential job function.  *See, e.g., Jackson v. Veteran's*

*Admin.*, 22 F.3d 277, 278-79 (11th Cir. 1994)(finding in context of ADA claim that "qualified" means that the claimant can perform the essential functions of the job, and holding that an individual's presence at work on a routine basis is an essential job function).

Second, the Service Manager position requires lifting 51 -100 pounds. (DX$_1$ C at 38-39, 55-56, DX$_1$ D at ¶ 23, and Ex. H attached thereto.) When plaintiff returned to work in late June 1999, he was restricted to lifting no more than 85 pounds. (DXI D, Ex. J attached thereto.) Archer did not think that plaintiff was then capable of performing the job.[16] (DXI D at ¶ 25.) Plaintiff's own testimony establishes that he "did not know" if he could physically perform any job at Goodyear, even as of July 8, 1998. (DXI A at 85-86, 162-163.) Given his own testimony and the lack of any other evidence suggesting he could perform such lifting requirements, plaintiff has not established that he was qualified for the position.

Third, plaintiff has failed to establish that he met even the minimum qualifications for the Service Manager position. The Service Manager position is the second highest position in the Store and requires managerial, sales, and service experience. (DXI D at ¶ 25.) There is no evidence before the court showing that plaintiff had any managerial, sales, or service experience. (DXI A at 7-29; DXI D at ¶ 12, and Ex. J attached thereto.) Plaintiff does present evidence that he had served as a pastor since 1994. (PXI D at ¶ 5.) However, there is no evidence before the court that this position gave plaintiff managerial, sales, or service experience and no evidence that defendant knew of plaintiff's service as a pastor.

Even if plaintiff could establish a prima facie case, Goodyear has established a legitimate

---

[16] Upon his return from leave, plaintiff worked approximately one week before returning to leave status. (DXI A at 170; DXI D, Ex. A attached thereto.)

nondiscriminatory reason for plaintiff's non-selection given his inability to be present at work and his inability to meet the minimum qualifications for the job. (DXI A at 7-29, 159, 167; DXI D, at ¶ 12, and Ex. J attached thereto.)

Plaintiff has failed to offer any evidence on which a reasonable jury could find defendant's articulated reason for failing to promote plaintiff to be pretext for illegal race discrimination. Although plaintiff disagrees with Goodyear's decision with regard to the Service Manager position, he presents no evidence that the decision was based on race. Therefore, defendant is entitled to judgment as a matter of law on this claim.

     3.     *June 1999 Customer Service Advisor Position*

Plaintiff also contends that defendant's failure to promote him to the position of Customer Service Advisor in early June, 1999, was racially discriminatory. (Am. Compl. ¶¶ 20-24.) As noted above, in order to establish a prima facie case of discriminatory failure to promote, plaintiff must establish: (1) that he is a member of a protected group; (2) that he was qualified for the promotion; (3) that he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected group were promoted. *See, e.g., Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000).

Plaintiff has failed to establish a prima facie case because he has not shown that he was qualified for the job. In June 1999 King hired David Farlow to fill the Customer Service Advisor position left open when Pool became Service Manager. (DXI D at ¶¶ 24-26; DXI G at ¶¶ 8-10.) Undisputed evidence shows that this position was filled while plaintiff was on medical leave and not released to work. (DXI A at159, 167.) Plaintiff had been off work for more than two months and had not been released to return to work when Farlow was hired. (*Id.*) Thus,

plaintiff was not qualified for the position, because the ability to be present at work is an essential job function. *See, e.g., Jackson*, 22 F.3d at 278-79.

Like the Service Manager position, performing the Customer Service Advisor job requires lifting up to 100 pounds. (DXI D at ¶ 26.) Plaintiff's own testimony and other proffered evidence establishes that he could not perform such lifting in early July, 1999, when the position became open and was filled, or afterward, when he returned to work with an 85 pound lifting restriction. (DXI A at 159,167; PXI E.) As a result, plaintiff has failed to establish a prima facie case.

Even if plaintiff could establish a prima facie case, Goodyear has articulated a legitimate nondiscriminatory reason for not promoting him to this position. First, plaintiff was on medical leave when the position became open and was filled. (DXI A at 159, 167.) Second, after returning from medical leave, plaintiff was unable to perform the lifting requirements of the job. (DXI A at 159, 167; PXI E.)

Plaintiff has not offered any evidence on which a reasonable jury could find defendant's articulated reason for plaintiff's termination to be pretext for illegal race discrimination. Therefore, Goodyear is entitled to judgment as a matter of law as to this claim. *See Elrod*, 939 F.2d at 1471-72 (11th Cir. 1991).

### 4.    *Hourly Rate as a Service Technician*

Plaintiff further contends that defendant discriminated against him with respect to his compensation on the basis of race, because on December 30, 1998, though both were Service Technicians, Anderson was paid a higher hourly wage than plaintiff. (Am. Compl. ¶¶ 25-27.) From July 3, 1997, until the end of his active employment on July 8, 1999, plaintiff's hourly rate

18

increased from $12.71 to $13.48 an hour.  (DXI D at ¶ 7, and Ex. A attached thereto.)

Anderson's pay increased from $13.60 to $14.42 during this period.  (DXI D at ¶ 7, and Ex. C

attached thereto.)  Aycock earned $13.05 an hour throughout this period.  (DXI D at ¶ 7, and Ex.

B attached thereto.)  It is undisputed that both Anderson and the plaintiff received raises during

their tenure at Store 2221, while Aycock did not.  (DXI D at ¶¶ 7-8.)  The court will assume that

plaintiff has established a prima facie case of discrimination with respect to compensation.

Therefore, the burden of production shifts to the defendant "to articulate a legitimate,

nondiscriminatory reason" for paying Anderson a higher hourly wage than plaintiff.  *See*

*McDonnell Douglas*, 411 U.S. at 802.

Defendant articulates two legitimate nondiscriminatory reasons for paying Anderson

more than plaintiff.  First, Store Managers Troy Tew ("Tew") and Tanner concluded that

Anderson's overall performance justified larger pay increases than were given to plaintiff.  (DXI

E at ¶ 4; DXI F at ¶ 4.)  They testified that Anderson's work was better than plaintiff's, because

Anderson had fewer "comebacks," that is, customers returning to the store who complained of

the same problem that the Service Technician was charged with fixing on the first visit.  (DXII A

at ¶ 3; DXII B at ¶ 3.)  As a result, Tew stated that he had more confidence in Anderson's

mechanical work.  (DXII B at ¶ 3.)  Second, Anderson was also considered to be a better team

player, and more manageable than plaintiff.  (DXII A at ¶3; DXII B at ¶ 3.)  For example, Tew

maintains that Thomas simply refused to come to work on one occasion, even though Tew had

instructed him to do so in advance.  (DXI F at ¶ 3, and Ex. B attached thereto.)

Plaintiff claims that defendant's proffered reasons cannot qualify as legitimate

nondiscriminatory reasons, because they rely on the supervisor's subjective assessment of an

employee. (Pl.'s Response Brief at 17.)  The Eleventh Circuit has rejected this argument.  A subjective reason may be proffered as a legitimate, nondiscriminatory reason so long as the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1033-34 (11th Cir. 2000)(ruling that a "subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas/Burdine* analysis.")  Under this reasoning, both proffered reasons are legitimate.  First, defendant's claim that plaintiff's supervisors had more confidence in Anderson's mechanical work than plaintiff's is a legitimate nondiscriminatory reason,  because it is based upon evidence that Anderson had fewer "comebacks" than plaintiff.  (DXII A at ¶ 3; DXII B at ¶ 3.)  Second, defendant's claim that plaintiff's supervisors considered Anderson to be more of a team player and more manageable than plaintiff is a legitimate nondiscriminatory reason, because it is based upon evidence that plaintiff was less apt to follow the instructions of his supervisors.  (*Id.*)  Because defendant has articulated legitimate nondiscriminatory reasons, plaintiff must show that defendant's articulated reasons are pretextual.  *See Combs*, 106 F.3d at 1528.

Plaintiff offered no evidence upon which a reasonable jury could find defendant's articulated reasons for paying plaintiff a lower hourly wage than Anderson to be pretextual. First, the only evidence plaintiff offers to dispute defendant's contention that Anderson had fewer "comebacks" than plaintiff is plaintiff's own assertion that the number of cars that he worked on that were returned by customers was no greater than the returns of any other Service Technician.  (PXII at ¶ 5.)  This conclusory allegation is insufficient to raise an inference of pretext.  *See Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir.

1996). Second, the only evidence plaintiff offers to dispute defendant's contention that plaintiff was not manageable, because he did not follow instructions is his assertion that, contrary to Tew's assertion, Tew did not instruct plaintiff to work on his day off. (PXII at ¶ 6.) Again, the court finds this evidence insufficient to establish pretext. Moreover, although receiving smaller raises than Anderson, plaintiff received larger increases than Aycock, despite the fact that Aycock is white and had more years of credited service with Goodyear. (DXI F at ¶ 4; DXI E at ¶ 4; DXI D at ¶ 8.) Because plaintiff has failed to meet his burden of providing sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions, Goodyear is entitled to summary judgment on this claim. *See Combs*, 106 F.3d at 1529.

####     5.     *Distribution of Work*

Plaintiff also contends that defendant unlawfully discriminated against him by refusing to assign to him job assignments that, under defendant's job assignment policy, should have been assigned to plaintiff. (Am. Compl. ¶ 28.) Goodyear's work distribution policy is undisputed. First, Goodyear generally distributes the first service job of the day to the Service Technician who arrives at work the earliest. (DXI A at 186-87; DXI D at ¶ 21.) However, it also honors customer requests for a particular Service Technician. (*Id.*) To establish a prima facie case for claims regarding differential work assignment, plaintiff must establish: (1) that he belongs to a protected group; (2) that he was qualified for the position; (3) that he suffered from differential application of work; and (4) that plaintiff suffered an adverse effect on his employment as a result. *See, e.g., Armstrong v. Flowers Hospital, Inc.*, 33 F.3d 1308, 1314 (11th Cir. 1994).

Plaintiff has failed to establish a prima facie case of discrimination with respect to work assignments. With one exception, plaintiff's only evidence in support of his contention is the

general assertion that on an unspecified number of occasions Goodyear did not follow its policy of assigning jobs to Service Technicians, but instead gave white Service Technicians more desirable assignments. (DXI A at 188.) Conclusory allegations, without more, are insufficient to establish a genuine issue of material fact. *See Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997). Therefore, plaintiff's conclusory allegation that defendant discriminated against him by not following its policy of assigning jobs on certain unspecified occasions is insufficient to establish a prima facie case. Goodyear has denied any discriminatory assignments and cannot reasonably be required to articulate specific legitimate reasons for unidentified assignments.

There is evidence of only one such event in the record. Plaintiff alleges that he was unfairly denied the opportunity to work on Invoice Number 070869, on September 30, 1998. (DXI D, Ex. F.) The book value of the job corresponding to this invoice is 1.10 hours. (DXI D at ¶ 20.) It is not disputed that plaintiff meets the first and second prongs of the prima facie case. (DXI A at 80, 85-86.)

However, plaintiff cannot on these facts satisfy the fourth prong of the test: plaintiff cannot show that he suffered an adverse effect on his employment. That week, plaintiff worked 13.40 hours. (DXI D at ¶ 20, and Ex. G-G600730 attached thereto.) Because all full time Service Technicians are guaranteed a minimum of thirty hours of pay at their regular hourly rate if they work a full week, (DXI D at ¶ 6.), and plaintiff was a full time Service Technician at that time who worked a full week, (DXI D, Ex. G-GY00730), plaintiff was paid for thirty hours of work that week at his hourly rate. Therefore, even if plaintiff had performed the job corresponding to the invoice, he would have realized no economic benefit from doing so.

Because undisputed evidence shows that even if he were awarded the job, he would not have been paid any more than otherwise, plaintiff cannot establish his prima facie case. Plaintiff has not proffered evidence of other events of discriminatory assignments. Therefore, Goodyear is entitled to judgment as a matter of law as to this claim.

## IV.  CONCLUSION

Based on the foregoing, the court is of the opinion that Defendant The Goodyear Tire & Rubber Company's Motion for Summary Judgment is due to be granted as to all of plaintiff's claims. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 3th day of August, 2001.

**SHARON LOVELACE BLACKBURN**
United States District Judge